Argued and submitted October 30, reversed with instructions to
reinstate order of the referee December 7, 1981

In the Matter of the Compensation of
Ray A. Whitman, Claimant.

**WHITMAN,**
*Petitioner,*

*v.*

**WESTERN CONCRETE,**
*Respondent.*

(No. 80-03300, CA A21148)

637 P2d 164

Allen T. Murphy, Jr., Portland, argued the cause for petitioner. With him on the brief was Richardson, Murphy, Nelson & Lawrence, Portland.

Emil R. Berg, Portland, argued the cause for respondent. On the brief were Daryll E. Klein, and Wolf, Griffith, Bittner, Abbott & Roberts, Portland.

Before Joseph, Chief Judge, and Warden and Warren, Judges.

JOSEPH, C. J.

**JOSEPH, C. J.**

The issue in this workers' compensation case is the extent of unscheduled disability. By determination order, claimant was awarded 25 percent unscheduled disability for a low back injury. The referee awarded claimant 60 percent. Claimant appeals from a determination of the Workers' Compensation Board awarding him 35 percent unscheduled disability; he seeks 100 percent unscheduled disability. On *de novo* review, we reinstate the referee's award.

Claimant is a 49-year old construction worker with a high school education who has worked for the same employer for 21 years. He first injured his back in 1967, when a hoist on which he was riding suddenly plummeted 20 to 30 feet. Claimant lost a week of work, recovered and had no apparent residuals. On December 22, 1978, while working as an operator of a concrete-pouring machine, he tripped over a cable at a job site and twisted his back. On March 7, 1979, he underwent extensive back surgery, including a four-level laminectomy and removal of a herniated disc.

Claimant attempted to return to work in January, 1980, but was not able to resume full-time employment. He has averaged about two and a half days of work a week and has found it difficult to work longer than five to six hours a day. After the injury, claimant was able to handle concrete-pouring jobs only by using a lighter system than he used before the injury; he cannot do jobs where more than a couple of pieces of equipment need to be attached to the pouring boom. In order to provide more work for claimant, his employer has attempted, with limited success, to find contracts that would require the heavier work to be performed by the general contractors. Claimant has retained his skill in repairing concrete pumps when they break down on the job, but his physical limitations prevent his working as a repairman in the shop. Since the 1978 injury, he has been unable to do regular construction work because of the heavy lifting.

Before the injury, claimant regularly raised two to three hundred head of hogs and some other livestock on his farm; he did most of the farm chores and maintenance work himself. After the injury, he was able to raise only a small number of sheep; he has been forced to rely on members of his family to shear and trim sheep, milk cows, bale hay and

maintain the farm. Claimant, whom the referee found particularly credible with respect to his complaints, has seldom been without pain in his low back and right hip and can sleep only two or three hours at a stretch. Working even part-time has put considerable physical strain on him.

■ The extent of permanent partial disability is measured by loss of earning capacity due to the compensable injury, taking into account age, education, training, skills and work experience. ORS 656.214(5).[1] Here, because of his physical limitations, claimant has been able to work only part-time at his former job and then only under special conditions. He is 49 years old and has only a high school education, 21 years of now largely unusable construction experience and no other marketable skills. We assess extent of unscheduled disability by the exercise of our independent judgment on *de novo* review. *Smith v. SAIF,* 51 Or App 833, 836, 627 P2d 495 (1981); *Owen v. SAIF,* 33 Or App 385, 388, 576 P2d 821 (1978).

■ The record persuades us that, as a result of this compensable injury, claimant has lost more than half his earning capacity. The referee so found, and the Board's order articulates no reason to conclude otherwise. We therefore reinstate the 60 percent unscheduled permanent partial disability awarded by the referee.

Reversed with instructions to reinstate the order of the referee.

---

[1] ORS 656.214(5) provides:

"In all cases of injury resulting in permanent partial disability, other than those described in subsections (2) to (4) of this section, the criteria for rating of disability shall be the permanent loss of earning capacity due to the compensable injury. Earning capacity is the ability to obtain and hold gainful employment in the broad field of general occupations, taking into consideration such factors as age, education, training, skills and work experience. The number of degrees of disability shall be a maximum of 320 degrees determined by the extent of the disability compared to the worker before such injury and without such disability. For the purpose of this subsection, the value of each degree of disability is $85."